BOGUE, Senior District Judge,
dissenting.
I respectfully dissent on two grounds. Initially, assuming as the majority concludes, that RFRA is constitutional as applied to federal law, I re-urge my dissent contained in this Court’s original opinion reversing the district court in this matter. See, Christians v. Crystal Evangelical Free Church (In re Young), 82 F.3d 1407, 1421-1423 (8th Cir.1996). I would conclude that the trustee’s recovery of the tithed monies does not substantially burden the debtors’ free exercise rights, that the bankruptcy code and § 548(a)(2) further a compelling governmental interest, and that § 548(a)(2) is the least restrictive means of furthering that interest. Id.
Alternatively, I would hold that RFRA is unconstitutional even as ’applied to federal law, and on that basis affirm the district court. Our instruction on the remand from the Supreme Court is to conduct further proceedings in light of City of Boerne v. Flores. As the majority indicates, in Flores the Supreme Court held RFRA unconstitutional as applied to state law because Congress exceeded its enforcement powers under § 5 of the Fourteenth Amendment. In my opinion,- however, Flores does more than merely declare RFRA unconstitutional as applied to state law. In broader terms, Flores dictates that, despite the broadest reach of Congress’ plenary powers, there is a point beyond which Congress may not - go in the exercise of its power without intruding upon the core function of .the judicial branch, thereby offending “vital principles necessary to maintain separation of powers.... ” Flores, _ U.S. _, _, 117 S.Ct. 2157, 2172, 138 L.Ed.2d 624 (1997). This rationale *864 of Flores applies to federal law, as well as state law.
In addition to its holding that RFRA exceeded Congress’ enforcement power because it so lacked congruence and proportionality that it could not be considered remedial or preventive legislation, Flores also held that RFRA went “beyond congressional authority” by invading the “province of the Judicial Branch.” Id. at _, 117 S.Ct. at 2172. RFRA was both beyond the scope of the power of Congress and violative of the separation of powers doctrine. Congress makes no secret of the fact that the express purpose of RFRA is to displace the Supreme Court’s decision in Employment Div. v. Smith, 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990), and return the Court’s “compelling interest” test to Free Exercise jurisprudence. See, 42 U.S.C. § 2000bb(b) (the act’s stated purposes are “to restore the compelling interest test as set forth in [the Court’s pre-Smith cases] and to guarantee its application in all cases where free exercise of religion is substantially burdened”); and, Flores, _ U.S. at _ and _, 117 S.Ct. at 2160 and 2171 (RFRA was enacted “in direct response to the Court’s decision in [Smith ]” and attempts a “substantive change of its holding”). In essence Congress, through RFRA, attempts to impose upon the judiciary, a standard of review for interpreting constitutional rights which it believes is a better standard than that crafted by the Court itself. This extraordinary exercise of power is postured as the creation of a “claim or defense to persons whose religious exercise is substantially burdened by government”. 42 U.S.C. § 2000bb(b). The very existence of one’s “claim” or right to be free from substantial burdens on the exercise of his or her religion, however, derives from the Supreme Court’s interpretation of the constitution and its opinion as to what it means to have a right to the “free exercise” of one’s religion. As the Flores Court explained, because the text of the First Amendment is ambiguous on the meaning of “free exercise,”[1] we look to the Court to interpret the Constitution and the Free Exercise clause in its exclusive province to “say what the law is.” Flores, _ U.S. at _, 117 S.Ct. at 2172 (citing Marbury v. Madison, 5 U.S. (1 Cranch) 137, 177, 2 L.Ed. 60 (1803)). Thus, when the Supreme Court decrees, insofar as one’s right of free exercise is concerned, that a facially neutral, generally applicable law may be applied to religious practices even when not supported by a compelling governmental interest, Smith, 494 U.S. at 879, 110 S.Ct. at 1600, that decree defines the parameters of the- constitutional right. And although Congress has the power to “enforce” constitutional rights, Flores, _ U.S. at _, 117 S.Ct. at 2163, it is powerless to enforce a free exercise right different from that which the Supreme Court has determined to be the right. Id. at _, 117 S.Ct. at 2164. (“Congress does not enforce a constitutional right by changing what the right is.”). Yet this is precisely what Congress is attempting to do with its passage of RFRA. See, Eugene Gressman, The Necessary and Proper Downfall of RFRA, 2 Chapman Univ. Nexus Journal of Opinion, 73, 77 (1997)(“RFRA is designed to protect the rights the judiciary would find and protect if the courts were to use the compelling governmental interest test with .respect to neutral laws that incidentally burden religious exercises.”). Such attempt, even as applied to federal law, in my opinion, is a serious breach of the separation of powers doctrine.
“The power to interpret the Constitution in a case or controversy remains in the Judiciary,” Flores, _ U.S. at _, 117 S.Ct at 2166, and “[w]hen the Court has interpreted the Constitution, it has acted within the province of the Judicial Branch, which embraces the duty to say what the law is.” Id. at _, 117 S.Ct. at 2172. This duty represents one of the core functions of the Judicial Branch, reserved to it by the Constitution. U.S. Const, art. III § 2. “The judicial authority to *865 determine the constitutionality of laws, in cases and controversies, is based on the premise that the ‘powers of the legislature are defined and limited....'" Flores, _ U.S. at _, 117 S.Ct. at 2162 (citing Marbury, 1 Cranch at 176, 2 L.Ed. 60). Yet, RFRA is expressly “designed to control cases and controversies.” Id. at _, 117 S.Ct. at 2172; 42 U.S.C.2000bb(b)(1). By forcing a standard of review upon the Article III judiciary, for the Court to apply in its adjudication of cases and controversies, Congress has gone beyond its limited and defined powers, intruded upon, and usurped a core function of the Article III branch.
The separation and independence of the coordinate branches of the Federal Government serve to prevent the accumulation of excessive power in any one branch. United States v. Lopez, 514 U.S. 549, 552, 115 S.Ct. 1624, 1626, 131 L.Ed.2d 626 (1995) (citation omitted). “[T]he system of separated powers and checks and balances established in the constitution was regarded by the Framers as a ‘self-executing safeguard against the encroachment or aggrandizement of one branch at the expense of the other.’ ” Morrison v. Olson, 487 U.S. 654, 693, 108 S.Ct. 2597, 2620, 101 L.Ed.2d 569 (1988) (citation omitted). Maintaining the separation of powers is an essential part of the Constitutional structure and plays a vital role in securing freedom for all. Lopez, 514 U.S. at 578, 115 S.Ct. at 1639 (Kennedy, J., concurring). “[T]he courts retain the power, as they have since Marbury v. Madison, to determine if Congress has exceeded its authority under the Constitution.” Flores, _ U.S. at _, 117 S.Ct. at 2172. To that end,
[wjhen the political branches of the Government act against the background of a judicial interpretation of the constitution already issued, it must be understood that in later cases and controversies the Court will treat its precedents with the respect due them under settled principles, including stare decisis, and contrary expectations must be disappointed.

Id.

In Lopez, the Supreme Court invalidated the Gun-Free School Zones Act of 1990, 18 U.S.C. § 922(q), on grounds that Congress exceeded its authority under the Commerce Clause to regulate commerce among the several states. Lopez, 514 U.S. at 551, 115 S.Ct. at 1626. The Act made it a federal offense “for any individual knowingly to possess a firearm at a place that the individual knows, or has reasonable cause to believe is a school zone.” Id. But because by its terms the statute had nothing to do with commerce or any economic enterprise whatsoever, and did not substantially affect interstate commerce, Congress lacked the power to enact the legislation in the first instance. Id., 514 U.S. at 561, 115 S.Ct. at 1630-31. The Lopez opinion confirms that Congress’ plenary power, though broad indeed, is subject to outer limits which the Court has ample power to enforce, and will enforce. Id., 514 U.S. at 557, 115 S.Ct. at 1628-29. Preservation of the constitutional structure is of primary importance to all officers of the Government, and it is the duty of the Court to “intervene when one or the other [branch] of Government has tipped the scales too far.” Id., 514 U.S. at 578, 115 S.Ct. at 1639 (Kennedy, J., concurring). More recently the Court reemphasized the importance of maintaining the constitutional structure and separation of powers, and reaffirmed its duty to call into check impermissible exercises of Congressional power. See, Printz v. United States, _ U.S. _, 117 S.Ct. 2365, 138 L.Ed.2d 914 (1997)(striking portions of the Brady Handgun Violence Prevention Act as beyond Congress’ authority to enact pursuant to its powers under the Commerce and Necessary and Proper clauses); See also, New York v. United States, 505 U.S. 144, 112 S.Ct. 2408, 120 L.Ed.2d 120 (1992)(declaring Congress powerless to compel states to enact or administer federal radioactive waste regulatory programs). With respect to RFRA as applied to federal law, the Court has the power and obligation to check exercises of Congressional power which it deems excessive and unconstitutional. In my opinion, Flores and the Court’s precedents do as much.
The majority concludes that Congress has the authority to enact RFRA and graft it onto all federal congressional law, and onto § 548(a)(2)(A) of the Bankruptcy Code in particular. Slip Op. at 861. I agree with the *866 majority that Congress, in its plenary power to establish “uniform Laws on the subject of Bankruptcies, ” is indeed capable of amending any bankruptcy legislation that it has passed. Establishment Clause issues aside, there is no question that Congress could redraft § 548 to include an exemption, for all religious tithes, from the avoidance power of the trustee. But that is not what Congress did here. What Congress did, in reality, was attempt to make a substantive change in free exercise rights, and then impose its interpretation of what the right ought to be onto the courts via “grafts” onto every federal law. Before one can say that Congress may permissibly change the Bankruptcy Code to accommodate the provisions of RFRA, however, one must assume the constitutionality of RFRA in the first instance. But if RFRA does not pass constitutional muster, as I conclude, then Congress is powerless to change the Bankruptcy Code through its power under the Necessary and Proper Clause. That is, although Congress has “the power ‘[t]o make all Laws which shall be necessary and proper for carrying into Execution’ its bankruptcy power,” Slip Op. at 860, it does not have the power to execute its bankruptcy power with a law which is not necessary and proper for that purpose.
As the majority notes, “[i]n considering the authority granted by the Necessary and Proper Clause to Congress to execute the powers enumerated in Article I the Supreme Court has explained: ... ‘Let the end be legitimate, let it be within the scope of the constitution, and all means which are appropriate, which are plainly adapted to that end, which are not prohibited, but consistent with the letter and spirit of the constitution, are constitutional.’” Slip Op. at 861 (citing, M’Culloch v. Maryland, 17 U.S. (4 Wheat) 316, 421, 4 L.Ed. 579 (1819). This three prong M’Culloch test is used to assess the validity of the exercise by Congress of any of its powers pursuant to the Necessary and Proper Clause. In Flores, the Court indicated that RFRA, as applied to state a law, failed the first prong of the M’Culloch test. Flores, _ U.S. at _, 117 S.Ct. at 2164 (legislation which alters the meaning of the Free Exercise Clause cannot be said to be enforcing the clause under § 5 of the Fourteenth Amendment). I would conclude that it fails the first prong as applied to federal law as well. As noted, Congress’ express intent in passing RFRA was to restore the compelling interest test to Free Exercise jurisprudence. 42 U.S.C. § 2000bb(b). This seeks to change the Court’s interpretation of the Free Exercise Clause and work a substantive change in free exercise rights, which is not a “legitimate end,” and which cannot fairly be said to be necessary and proper for carrying into execution the Bankruptcy powers. See also, Gressman, 2 Chapman Univ. Nexus Journal of Opinion at 82-83 (arguing RFRA as applied to federal law fails all three prongs of M’Culloch test). To paraphrase the Printz decision, “[w]hen a law ... for carrying into execution the [Bankruptcy Clause] violates the principle of [separation of powers] ... it is not a law ... proper for carrying into execution of the [Bankruptcy Clause], and is thus, in the words of the Federalist, ‘merely an act of usurpation’ which deserves to be treated as such.” Printz, _ U.S. at _, 117 S.Ct. at 2379 (internal quotations and citations omitted).
I do not suggest by my dissent that Congress’ goal of “protect[ing] religious liberties as fully as possible from encroachment by all government actors,” Slip Op. at 859, is somehow evil or untoward. To the contrary, Congress’ efforts to protect religious freedom are most commendable and rightly pursued through the proper channels (e.g., a constitutional amendment); but not at the expense of the constitution.
Much of the Constitution is concerned with setting forth the form of our government, and the courts have traditionally invalidated measures deviating from that form. The result may appear ‘formalistic’ in a given case to partisans of the measure at issue, because such measures are typically the product of the era’s perceived necessity. But the Constitution protects us from our own best intentions: It divides power among sovereigns and among branches of government precisely so that we may resist the temptation to concentrate power in *867 one location as an expedient solution to the crisis of the day. ...
New York, 505 U.S. at 187, 112 S.Ct. at 2434.
I believe that with the passage of RFRA, Congress has gone beyond its authority and “tipped the scales too far.” It has impermis-sibly intruded upon the province of the Article III branch by imposing upon the courts a standard of review to be applied in all cases and controversies involving the free exercise of religion. Accordingly, I would conclude that RFRA is unconstitutional as applied to federal law. It follows, therefore, that I would affirm the order of district court allowing the trustee to bring the tithed monies back into the debtors’ estate pursuant to 11 U.S.C. § 548(a).

. . “Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof_” U.S. Const, amend. I.